UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN ZACCARO, : <br> : <br> Plaintiff, : <br> : **Civil Action No. 12-1749 (SRC)** <br> v. : <br> : **OPINION** <br> CAROLYN COLVIN, : <br> ACTING COMMISSIONER OF SOCIAL : <br> SECURITY : <br> : <br> Defendant : | |

**CHESLER,** District Judge

## INTRODUCTION

Plaintiff John Zaccaro, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), seeks review of the Commissioner of Social Security Administration's ("the Commissioner") decision denying his application for Social Security Disability Benefits. Plaintiff argues that the decision is not supported by substantial evidence and should be reversed. For the reasons set forth in this Opinion, this Court finds the Commissioner's decision is supported by substantial evidence and will be affirmed.

## PROCEDURAL HISTORY

On February 27, 2008, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning March 5, 2007, pursuant to Sections 216(i) and 223(d) of the Social Security Act, codified as 42 U.S.C. §§ 416(i) and 423, respectively. Plaintiff alleges disabilities of chronic sciatic pain in his lower back and left leg resulting from degenerative spinal discs, which led to corrective spinal surgery. (Tr. 243).

1

Plaintiff appeared and testified at a hearing held before Administrative Law Judge Michal L. Lissek ("ALJ Lissek") on July 14, 2010. A supplemental hearing was held on September 21, 2010, in which medical expert Dr. Martin A. Fechner and vocational expert Rocco J. Meola appeared and testified. ALJ Lissek issued a decision on September 29, 2010, finding that Plaintiff was not eligible for Social Security disability benefits based upon his disabilities. The following is a summary of the ALJ's findings:

1. Plaintiff was not engaged in "substantial gainful activity" since the alleged onset date of his disability.

2. Plaintiff did have the following "severe" impairments: status-post lumbosacral surgery, lumbosacral pain syndrome and history of asthma. However, Plaintiff did not have an impairment or combination of impairments that matched or medically equaled one of the impairments listed in the Regulations.

3. Plaintiff has the residual functional capacity to perform sedentary work, with various exertional limitations.

4. Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, Plaintiff's statements regarding the intensity, persistence and limiting effects of those symptoms are not credible insofar as they conflict with the residual functional capacity assessment and objective medical evidence.

5. Plaintiff is unable to perform any past relevant work. However, considering Plaintiff's age, education, experience, and residual functional capacity, there are jobs in sufficient numbers that exist in the national economy that Plaintiff can perform.

6. Plaintiff has not been under a disability from the alleged onset date of March 5, 2007 through the date of the ALJ's decision.

The Appeals Council affirmed the ALJ's decision on January 19, 2012. Pursuant to 42 U.S.C. §§ 1383(c) and 405(g), Plaintiff filed the instant action, seeking review of the Commissioner's decision.

## STATEMENT OF FACTS

### A. Background

Plaintiff, John Zaccaro, is a 47-year-old United States citizen who resides with his mother. (Tr. 57, 67). Prior to the onset of his alleged disabling condition, Plaintiff worked as a machine operator for a concrete company, a position that involved heavy labor. (Tr. 58-60). Plaintiff worked regularly until 2005, at which time he went to the emergency room several times throughout the year because of his alleged symptoms. (Tr. 300-40, 350-52). As time went on, Plaintiff claims he missed more work for appointments with his doctors. (Tr. 59). Plaintiff testified that he was terminated from his employment in May 2007 for having to take too much time off for these appointments. (Tr. 59). Plaintiff reports that he is unable to return to work because of the persisting effects of his pain. (Tr. 64).

### B. Claimed Disabilities

Beginning March 5, 2007, Plaintiff claims disability due to chronic lumbosacral pain resulting from foraminal stenosis. Plaintiff states that he cannot work because of the intensity of his pain, which prevents him from sitting or standing for extended periods of time. (Tr. 64, 66).

Plaintiff went to the emergency room several times in 2005 to receive treatment for severe back and leg pain. (Tr. 300-40, 350-52). He received multiple epidural steroid injections in an effort to combat the pain, all of which failed. (Tr. 314, 321, 329). A lumbar spine MRI

3

was ordered by treating physician specialist and spinal surgeon Dr. Arnold Criscitiello, and was performed on June 10, 2005. (Tr. 342). The report indicates that Plaintiff suffered from "multilevel degenerative disc disease" as well as "intervertebral disc space narrowing and generalized disc bulging." (Tr. 343). The L4/5 vertebrae were particularly affected by the degeneration. (Tr. 343). On January 9, 2006, Plaintiff underwent spinal fusion surgery in an effort to alleviate the pain where epidurals had failed. (Tr. 371-74). Plaintiff's pain still required large doses of pain medication after the surgery, and was exacerbated when he fell off of a ladder onto his back while working in January of 2007, sending him to the emergency room once more. (Tr. 412). He shortly thereafter received another epidural injection, which failed to alleviate his symptoms. (Tr. 412). Plaintiff continued to see doctors, and remained on pain medication. (Tr. 425, 431, 447). A second surgery was suggested, but Plaintiff stated that he had lost his insurance and was unable to pay for the procedure. (Tr. 64).

   **C. Medical Evidence Considered by the ALJ**

      **a.** <u>Medical Opinion of treating physician Dr. Schlossberg</u>

Dr. Schlossberg had cared for Plaintiff since February 2004 on a periodic basis and then as needed. (Tr. 16). Based on his most recent examination of the Plaintiff in November of 2007, Dr. Schlossberg rated Plaintiff as being able to stand and walk less than two hours in an eight hour work day, with no limitations on sitting. (Tr. 16). Furthermore, Dr. Schlossberg limited Plaintiff to lifting and carrying up to five pounds. (Tr. 16).

      **b.** <u>Medical Opinion of treating pain management specialist Dr. Hajela</u>

Dr. Hajela is a treating pain management specialist from Jersey Rehabilitation, where Plaintiff visited several times. (Tr. 471-528). He had treated Plaintiff since August 23, 2007 for his lumbosacral pain radiating to Plaintiff's left buttock and thigh. (Tr. 16). Dr. Hajela

4

prescribed numerous pain medications and administered occasional steroid injections to the Plaintiff. (Tr. 16). Based on examination in late April 2008, he reported that Plaintiff was able to stand and walk for up to two hours in an eight hour work day, and could sit for less than six hours in the same time period. (Tr. 17). After a subsequent examination in August of the same year, Dr. Hajela revised his opinion and found that Plaintiff could sit for up to six hours, due to the fact that Plaintiff's capacities had improved. (Tr. 17). Notes from clinical examinations indicate that Plaintiff had a normal gait and was able to sit comfortably. (Tr. 17). Additionally, nothing in Plaintiff's records from Jersey Rehabilitation indicate any neurological deficits or nerve root compromise. (Tr. 17).

### c. Medical Opinion of consultative examiner Dr. Weber

Dr. Weber gave Plaintiff an orthopedic consultative examination in January 2010. (Tr. 17). Based on this examination, Dr. Weber opined that Plaintiff could sit for up to three hours in an eight hour workday, could stand for up to four hours, and walk up to one hour. (Tr. 17). Dr. Weber further assessed that Plaintiff could only sit for fifteen minutes at one time, and stand or walk for only twenty minutes at one time. (Tr. 537). He reports that Plaintiff was not in any apparent distress, nor did Plaintiff need an independent assistive device in order to ambulate. (Tr. 17). Dr. Weber reported no tenderness or spasm in the lumbosacral spine or interspinous regions. (Tr. 17). Furthermore, Dr. Weber's records show that the muscle strength in the left hip and knee was only slightly weak—only four out of five in both joints—but that the left ankle was a full five out of five for strength, as was the entire right leg. (Tr. 17). Dr. Weber noted that Plaintiff had some limitation of motion in the lumbosacral spine, but was nevertheless able to ascend and descend the examination table on his own. (Tr. 17). His report indicates that Plaintiff "appear[ed] comfortable during the examination." (Tr. 533).

   **d.** <u>Medical Opinion of state agency medical consultant Dr. Briski</u>

Dr. Briski is the state agency medical consultant who gave Plaintiff his initial residual functional capacity assessment in May 2008. (Tr. 467). He opined that Plaintiff could: (1) occasionally lift twenty pounds, and frequently lift ten pounds; (2) stand and walk four hours a day in an eight hour work day; (3) sit with normal breaks for four hours a day in the same time period; (4) push and pull without limitation; (5) and occasionally climb, balance, stoop, kneel, crouch and crawl. (Tr. 461-62). Dr. Briski noted tenderness over the lumbar paraspinal left sacroiliac areas. (Tr. 461). He also found that Plaintiff had a normal gait and a reduced lumbosacral spinal range of motion. (Tr. 461).

   **e.** <u>Medical Testimony of Dr. Fechner, board-certified expert in internal medicine</u>

Based on his review of the medical records, Dr. Fechner stated that Plaintiff had three diagnoses: (1) L4-L5 degenerative changes; (2) severe bilateral foraminal stenosis; and (3) left L5-S1 chronic radiculopathy. (Tr. 30).

Dr. Fechner testified that these diagnoses would explain Plaintiff's pain. (Tr. 30). He stated that the record showed that Plaintiff had undergone an L4-L5 bilateral laminectomy in January of 2006. (Tr. 31). He also stated that Plaintiff had received several physical examinations after the surgery. (Tr. 31). In his first examination in 2008, Dr. Fechner states, Plaintiff presented with a forward-flexed gait and some tenderness in the lumbar lower facets. (Tr. 31). Neurological exam reports were negative. (Tr. 32).

Dr. Fechner notes that Plaintiff was examined by Dr. Weber, an orthopedic consultative examiner, in January 2010. (Tr. 32). Dr. Fechner testified that Dr. Weber noted that Plaintiff had no cane, was comfortable sitting during the examination, had no tenderness or spasm in the

6

lumbar spine, and no atrophy in the legs. (Tr. 32). Additionally, Dr. Fechner noted that Plaintiff was not on any pain medication after 2009. (Tr. 33-34).

Dr. Fechner testified that, based on his review of the medical records, Plaintiff's impairments did not meet or equal any of the listings, either singly or in combination. (Tr. 34). He further stated that he believed Plaintiff's capacity to work was restricted by his pain, but that he retained the capacity to perform a range of sedentary work with certain restrictions. (Tr. 35). Dr. Fechner found that Plaintiff would be capable of sedentary work under the following restrictions in an eight hour work day: (1) no more than an aggregate of two hours walking and standing; (2) lifting ten pounds occasionally; (3) sit for six hours a day, with stretching breaks every hour; (4) occasional bending and stooping; (5) avoid scaffolding, ladders, and crawlspaces; (6) avoid extremes in temperatures, excessive amounts of dust, and known pulmonary irritants. (Tr. 35).

D. **Expert Testimony Considered by the ALJ**

    a.  <u>Expert Testimony of Rocco Meola, Vocational Expert</u>

Mr. Meola reviewed the vocational evidence for Plaintiff's case in the context of the Dictionary of Occupational Titles. (Tr. 47). He rated Plaintiff's position as a yard worker for a concrete manufacturer as a heavy labor job at the semi-skilled level. (Tr. 48). Mr. Meola also rated Plaintiff's prior position as a laborer for a remodeling company as very heavy and on the low end of semi-skilled. (Tr. 48). Based on the ALJ's finding that Plaintiff had the residual functional capacity for sedentary work with specific restrictions, Mr. Meola testified that Plaintiff would not be able to return to his prior work. (Tr. 49-50).

During his testimony, ALJ Lissek presented Mr. Meola with a hypothetical individual with two sets of restrictions, one set based on the restrictions found by Dr. Weber and the other

on those found by Dr. Fechner, asking Mr. Meola what jobs, if any, a person with such impairments would be capable of performing. (Tr. 49-51). Mr. Meola testified that, under Dr. Weber's restrictions, there were not sufficient jobs in the national economy that Plaintiff could perform. (Tr. 49). Under the second set of restrictions, Mr. Meola testified that Plaintiff would be capable of performing the work required of (as examples) a compact assembler, an order clerk, a carding machine operator, and a document prep worker. (Tr. 50-51). Mr. Meola testified that about approximately 1,200 of these jobs exist in the northern New Jersey region, and over 30,000 nationally. (Tr. 51).

## DISCUSSION

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.2d 357, 360 (3d Cir. 2004). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir.

1992), cert. denied sub nom.; Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history, and present age."  Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).  "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision."  Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

B.  **Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. § 423(d)(5).  To qualify for Social Security disability benefits, a claimant must first establish that he is needy and aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is predicated on whether a claimant's impairments are so severe that he "is not only

unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). To demonstrate that a disability exists, a claimant must present evidence that her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

### C. The Five-Step Evaluation Process

Determinations of disability are made by the Commissioner pursuant to the five-step process outlined in 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At step one, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity, which is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510, .1520. If a claimant is found to be engaged in such activity, then the claimant is not "disabled" and the disability claim will be denied. Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from any severe impairments. 20 C.F.R. §§ 404.1520(a)(ii), (c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In making this determination, the age, education, and work experience of the claimant will not be considered. Id. If a severe impairment is found, the inquiry proceeds to step three.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work,

listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Commissioner of Social Security, the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[1] apply and give reasons why those listings are not met or equaled.  220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000).  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  Id.  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform her past relevant work, she will not be found disabled under the Act.  In Burnett, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether the claimant has the level of capability need to perform the past relevant work.

---

[1] Hereinafter, "listing" refers to the list of severe impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

11

Burnett, 220 F.3d at 120. If the claimant is unable to resume her past work, and her condition is deemed "severe," but is not listed, the evaluation moves to the final step.

At step five, the burden of proof and production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. §§ 404.1512(g), 404.1560(c)(1). If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled. Id.

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, throughout the five-step process, "must analyze the cumulative effect of the claimant's impairment in determining whether she is capable of performing work and is not disabled." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999); 20 C.F.R. § 1523. At every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but it need not "adhere to a particular format." See, e.g., Rivera v. Commissioner, 164 F. App'x 260, 262 (3d Cir. 2006). However, in the first four steps of the process, Plaintiff bears the burden of proving that the impairments in combination are severe enough to qualify her for benefits. See Williams v. Barnhart, 87 F. App'x 240, 243 (3d Cir. 2004) (Plaintiff bears burden of showing how a combination-effects analysis would have resulted in a qualifying disability.)

D. **ALJ Lissek's Findings**

ALJ Lissek followed the five-step sequential evaluation and determined that Plaintiff was not disabled within the meaning of the Act. (Tr. 12-13).

ALJ Lissek held that Plaintiff satisfied the first step because he has not engaged in substantial gainful activity since the onset of his alleged disability on March 5, 2007. (Tr. 14).

12

In satisfying step two, ALT Lissek found that Plaintiff has "the following severe impairments: status-post lumbosacral surgery, lumbosacral pain syndrome and history of asthma (20 CFR 404.1520(c))."  (Tr. 14).

At step three, ALT Lissek determined that none of Plaintiff's ailments, or alleged ailments, met or medically equaled, alone or in combination, any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 14).

The ALJ also considered Plaintiff's subjective complaints of pain and concluded that, although Plaintiff's diagnosed severe ailments could be reasonably expected to cause him pain, Plaintiff's allegations concerning the severity, persistence, and limiting effects of the pain were not credible where they contradicted the assessment of Plaintiff's residual functional capacity.  (Tr. 16).  ALJ Lissek made this determination based on, among other things, a lack of objective medical evidence that Plaintiff's pain precluded him from performing all work activity, and medical records that showed Plaintiff had no neurological deficits.  (Tr. 16).

At step four, the ALJ found that Plaintiff was a capable of handling the exertional, postural, and environmental demands of sedentary work, with some restrictions.  (Tr. 15). Plaintiff can handle the following exertional demands: (1) lift or carry ten pounds occasionally; and (2) sit for no more than six hours in an eight hour work day, if given a brief time to stretch every hour.  (Tr. 15-18).  Plaintiff can handle sedentary positions with the following postural and environmental demands: (1) no use of ladders or scaffolds; (2) no crawling; (3) only occasionally bending and stooping; and (4) no working around extremes in temperature or excessive amounts of dust or other known pulmonary irritants.  (Tr. 16).  As Plaintiff's former jobs as a remodeling laborer and concrete yard worker both required heavy exertional demands,

the ALT thus noted that Plaintiff would not be able to perform his past work as it was previously performed, given his current exertional, postural, and environmental restrictions. (Tr. 18).

At step five, the ALJ heard testimony from vocational expert Rocco Meola. The ALJ determined that Plaintiff is a younger individual with a limited education. (Tr. 18). Considering Plaintiff's residual functional capacity along with his age, education, and work experience, there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform. (Tr. 18-19). As such, the ALJ held that Plaintiff was not under a disability as defined by the Social Security Act from the alleged onset date through the date of the decision. (Tr. 19).

E. **Analysis**

Plaintiff contends that ALJ Lissek's decision should be reversed because: (1) ALJ Lissek failed to properly evaluate Plaintiff's pain; and (2) ALJ Lissek erred in failing to accord any weight to the medical opinion of the specialist consultative examiner. (Pl.'s Mem. L. at 1).

### 1. Did ALJ Lissek Fail to Properly Evaluate Plaintiff's Subjective Complaints of Severe Pain?

Plaintiff contends that ALJ Lissek's credibility determination in regard to Plaintiff's statements about his pain was in error. (Pl.'s Mem. L. at 25-28). The Regulations state that subjective reports of pain must be considered as a factor in the ALJ's analysis. 20 CFR 404.1529(c). Since pain cannot be quantified, subjective "assertions of pain must be given serious consideration." Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981). Plaintiff, however, still bears the burden of producing evidence to support his subjective complaints of severe pain. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (the Plaintiff bears the burden of proof at the first four steps). Accordingly, subjective claims of pain and impairment "will not alone establish . . . [disability]; there must be medical signs and laboratory findings . . . [demonstrating] medical impairments, which could reasonably be expected to produce the pain or other

14

symptoms alleged." 20 C.F.R. § 404.1529(a). In other words, while there must be objective evidence of a condition that could cause the pain alleged, there need not be objective evidence of the pain itself. Green v. Schweiker, 749 F.2d 1066 (3d Cir. 1984). It is within an ALJ's discretion to discount Plaintiff's subjective complaints of severe pain if the ALJ has considered Plaintiff's complaints and can "specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990).

In this case, there is substantial evidence to support the ALJ's decision to accord lesser weight to Plaintiff's subjective claims of pain. The ALJ discussed how, despite the fact that the medical record shows that Plaintiff was treated by various physicians over the years for his lower back and leg pain, the record does not support Plaintiff's allegations of the severity of that pain. (Tr. 15-18). For example, the ALJ points out that Plaintiff returned to work after his surgery in January 2006, where he was able to stand and walk the entire day, and lift 100 pounds. (Tr. 16, 392). The ALJ explained that Plaintiff also continued working while receiving epidural steroid injections in March 2005. (Tr. 15, 312). ALJ Lissek also pointed to the fact that, after Plaintiff's accident in the workplace in January 2007, he informed pain management specialist Dr. Koppel that his symptoms, despite being somewhat worse for falling on his back, were "mostly status quo," as evidence that his pain was not as limiting as he testified. (Tr. 16, 431).

The ALJ also noted that treatment notes throughout the record do not reflect any neurological deficits; the records indicate that Plaintiff suffered no loss of sensation or muscle atrophy. (Tr. 16-17, 484, 590, 525-26, 533). She explained that, when Plaintiff was examined by Dr. Weber in January 2010, he showed no evidence of muscle atrophy, and was able to perform several physical tasks independently. (Tr. 16, 533). The ALJ cited the fact that no

physician ever reported that Plaintiff was in acute distress, and that, in January of 2010, he had no tenderness or spasm in his lumbosacral spinal region. (Tr. 16, 484, 509, 533). The ALJ also discussed the medical reports of Plaintiff's physicians, and explained the specific reasons why each was credited to a certain degree. (Tr. 16-18). Furthermore, the ALJ relied on the assistance of medical expert Dr. Fechner, who testified that Plaintiff's subjective complaints about the limiting effects of his pain were simply not corroborated by the objective medical evidence available in the record. (Tr. 17-18, 31, 37-38). The ALJ thus specified her reasons for rejecting Plaintiff's claims and supported her conclusion with medical evidence in the record, as Matullo requires.

Plaintiff also argues that ALJ Lissek erroneously concluded that Plaintiff's pain was controlled by his pain medications. (Pl's Mem. L. at 28). As just discussed, the ALJ's discounting of Plaintiff's statements about his pain is supported by substantial evidence. However, the true problem with Plaintiff's arguments here is that the question is whether the Plaintiff was able to provide sufficient objective medical evidence that his pain limits his residual functional capacity to such a degree that he is no longer able to work. As that determination is made at step four, the burden still rests on the Plaintiff to provide such evidence, and this Court will not disturb the ALJ's decision where it is founded on substantial evidence.

The evidence pointed to by the ALJ amounts to more than a mere scintilla; it demonstrates that it was reasonable for the ALJ to not fully credit Plaintiff's claims when determining his residual functional capacity. Thus, the ALJ's decision to disregard Plaintiff's subjective claims of pain due to a lack of medical evidence was supported by substantial evidence.

   2. **Was it Clear Error to Accord No Weight to the Opinion of the Specialist Consultative Examiner?**

Plaintiff asserts that ALJ Lissek erred by giving no weight to Dr. Weber's opinion. (Pl.'s Mem. L. at 35). In this case, however, the opinion of one of Plaintiff's treating physicians—Dr. Hajela— was credited over the opinion of Dr. Weber. (Tr. 16-17). The Third Circuit has held that the "opinion of a treating physician is entitled to more weight than that of a one time consultative examiner." Mason v. Shalala, 994 F.2d 1059, 1067. ALJ Lissek was at liberty to reject Dr. Weber's opinion in favor of another so long as all of the evidence was considered and some reason was given for rejecting the evidence that was rejected. See, e.g., Diaz v. Commisioner of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009).

ALJ Lissek explained that she rejected Dr. Weber's opinion because it was inconsistent with his objective medical findings. (Tr. 17). She noted there was no evidence of tenderness or spasm in the lumbosacral spine, and only slight weakness in the left hip and knee. (Tr. 17, 37-38). The ALJ pointed out that Plaintiff ambulated independently without the aid of any assisting device. (Tr. 17). She further relied on the fact that Dr. Weber's notes indicated that Plaintiff ascended and descended the examination table on his own, despite the limitations of motion of the lumbosacral spine. (Tr. 17).

The ALJ also relied on alternative opinion testimony from Plaintiff's original treating physician, Dr. Schlossberg, who gave his opinion that Plaintiff had no limitations in sitting. (Tr. 16, 446). Another of Plaintiff's treating physicians, Dr. Hajela, was heavily credited in his assessment that Plaintiff would be able to sit for six hours in an eight hour day based on improvements in his functional capacity. (Tr. 17). State agency consultant Dr. Briski thought that Plaintiff could sit for four hours in an eight out day. (Tr. 17). Medical expert Dr. Fechner opined that Plaintiff would be able to sit for an aggregate of up to six hours in an eight hour work day. (Tr. 35). Literally every other physician who gave opinion testimony as to Plaintiff's

residual capacity gave Plaintiff a greater sitting capacity than Dr. Weber.  (Tr. 16-18).  Thus, while the fact that the ALJ rejected a state medical consultant opinion calls for careful examination of that decision, the ALJ based that decision on evidence from other competent treating physicians and the expert medical opinion of Dr. Fechner, and ALJ Lissek had substantial evidence to give lesser weight to Dr. Weber's opinion.

## CONCLUSION

For the reasons stated above, this Court finds that the ALJ's decision is supported by substantial evidence and will be affirmed.

  s/ Stanley R. Chesler<br>
STANLEY R. CHESLER, District Judge

Dated: June 28, 2013